O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK R. CARBAJAL,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>R. RABORN and DOES 1–10, inclusive,<br><br>　　　　　　Defendants. | Case No. 2:11-cv-9134-ODW (DTBx)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [51]** |

　　　　Qualified immunity shields on-duty prison officers from liability unless they violated a clearly established right. When Plaintiff Carbajal fought another inmate and the two of them refused to lay on the ground and continued fighting upon the sounding of the alarm, Defendant Officer Raborn fired a foam round at Carbajal, missing him. But because they still did not lay down, Raborn then fired a second shot and struck Carbajal in the face.

　　　　Carbajal sued for excessive use of force in violation of the Eighth Amendment and negligence. Raborn now moves for summary judgment, refuting both claims and asserting that he is entitled to qualified immunity. (ECF No. 51.) The Court **GRANTS** Raborn's Motion by concluding that Raborn's attempt to restore order did not violate a clearly established right and he is thus entitled to qualified immunity.[1]

---

[1] Having carefully considered the papers in support of and opposition to the motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## I. FACTUAL BACKGROUND

Erik Carbajal was incarcerated at Ironwood State Prison when he got into a fist fight with another inmate, Andrew Carrillo, in the dayroom of Facility A, Housing Unit 4. (SUF ¶¶ 1–3.) Officer Raborn was stationed in Housing Unit 4's control booth, which is centrally located on the second floor, overlooking the dayroom. (SUF ¶¶ 10, 12.) The booth was stocked with a Ruger Mini-14 rifle, a 40mm launcher, and several oleoresin capsicum ("OC") grenades. (SUF ¶¶ 14–16.)

Raborn observed the two inmates exchanging blows in the C-side of the dayroom directly under the control booth, and he immediately activated the alarm. (SUF ¶¶ 4, 20–21.) All other inmates in the dayroom complied with the alarm by getting down on the ground, but Carbajal and Carrillo continued fighting. (SUF ¶¶ 23–25.) Raborn verbally ordered them to get down four times. (SUF ¶ 25.) Two other prison officers, Officers Rodriguez and Stewart, were present at the time of the fight, and upon hearing the alarm they moved towards the disturbance and commanded the fighting inmates to "Get on the ground!" (SUF ¶¶ 52–54.)

Raborn observed that Carbajal and Carrillo—still fighting—had moved approximately twenty-five feet from the control booth. (SUF ¶ 25.) Because he felt he would be unable to accurately throw the OC grenades through the bars covering the booth's windows, Raborn retrieved the 40mm launcher, which fires a single 4557 foam round. (SUF ¶¶ 17, 38.) To compel his compliance, Raborn targeted Carbajal's non-vital areas below the waist ("green-zone"), but he missed and the foam round ricocheted off the ground near their feet. (SUF ¶¶ 27–28.)

Neither Carbajal nor Carrillo got to the ground after the shot was fired. (SUF ¶ 30.) Carbajal contends that the fight ended when he heard the "big bang," and he separated about seven feet from Carrillo. (SUF ¶ 103.) At that time, they had traveled about forty feet from the control booth and were still standing, facing each other. (SUF ¶¶ 29, 33.) Raborn then reloaded the 40mm launcher, and he and Officer Rodriguez continued to command Carbajal and Carrillo to get down. (SUF ¶¶ 30, 53.)

1  Both inmates ignored the orders to get down. (SUF ¶¶ 30–32, 103.) Approximately
2  ten seconds after firing the first round, to restore order and prevent escalation, Raborn
3  aimed the 40mm launcher at Carbajal's green zone and fired a second foam round.
4  (SUF ¶¶ 32, 40.) It struck Carbajal under his right eye and he suffered injuries
5  including fractures, contusions, detachment, hemorrhage, and retinal scarring. (SUF
6  ¶ 111.)

## II.  LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

/ / /

/ / /

### III.     DISCUSSION

In support of his Motion for Summary Judgment, Raborn argues that Carbajal cannot satisfy the elements of his Eighth Amendment and negligence claims and that he is entitled to qualified immunity.  Because the Court finds that Raborn is entitled to qualified immunity, it need not address the other arguments.  *Marquez v. Gutierrez*, 322 F.3d 689, 691 (9th Cir. 2003) (holding the Eighth Amendment inquiry and the qualified-immunity inquiry must be treated separately.)

Qualified immunity shields government officials acting in their official capacities from liability and from litigation unless their conduct violates a clearly established statutory or constitutional right that would be known to a reasonable person.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The qualified-immunity standard "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Prior to the Supreme Court's decision in *Pearson v. Callahan*, 555 U.S. 223 (2009), the qualified-immunity inquiry required a sequential two-step analysis to determine whether (1) the plaintiff alleged sufficient facts to show the defendant's conduct violated a constitutionally-protected right, and (2) the violated right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Now district courts have discretion to decide which prong to address first.  *Pearson*, 555 U.S. at 236.

In this case, the Court starts with the "clearly established" prong, which asks whether it would have been clear to a reasonable officer that his conduct under the circumstances was unlawful.  *Saucier*, 533 U.S. at 202.  In making this objective determination, the Ninth Circuit views the incident from the perspective of a reasonable official on the scene, irrespective of a plaintiff's allegations of malicious intent.  *Marquez*, 322 F.3d at 692–93.

A reasonable official in Raborn's position would have perceived a threat to the safety and security of inmates or officers.  Carrillo and Carbajal ignored the alarm and four verbal commands to "get down," and had been actively fighting for about thirty-

five seconds when Raborn fired the initial shot. (SUF ¶¶ 25, 40.) After hearing the blast of the 40mm launcher, they separated but continued to ignore orders to get down. (SUF ¶¶ 30, 53–54, 103.) Carbajal was facing the control booth—and Carrillo—when Raborn fired the second shot, approximately ten seconds after firing the first round. (SUF ¶¶ 30, 40, 103.) And though the parties disagree about whether the two inmates were standing still at the exact moment the foam round struck Carbajal, to observers it appeared as if they "were going to go at it again." (SUF ¶ 31.)

Under these circumstances, the Court finds that a reasonable prison officer would not only consider Raborn's conduct lawful, but would likely have done the same. Raborn shot Carbajal to restore order in the dayroom. (SUF ¶ 32.) Both inmates refused to comply with the officers' orders to get down, which signifies to prison officials that an inmate is "still participating in the incident, and thus a threat of injury to other inmates or staff." (Raborn Decl. ¶ 12; Rodriguez Decl. ¶ 7; Stewart Decl. ¶ 6.) Carbajal even stated that he did not comply because he was defending himself from Carrillo. (Carbajal Dep. 69:5–16.) Carbajal also admits he was shot "almost immediately" after separating from Carrillo. (SUF ¶ 103.) From Carbajal's own belief that the fight would continue, the Court can deduce that Raborn reasonably believed that the threat was ongoing.

And if there is an ongoing threat, prison guards are permitted to use even deadly force "in a good faith effort to maintain or restore discipline." *See Whitley v. Albers*, 475 U.S. 312, 320 (1986); *see also Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001) (prison officials are accorded wide-ranging deference in adopting and executing practices to further prison order and security.) Even if an officer makes a reasonable mistake, he is still entitled to immunity. *Saucier*, 533 U.S. at 205.

This deference goes a long way. In *Marquez*, a prison official in a guard tower 360 feet away mistakenly shot an unarmed bystander during a fight between other inmates, allegedly violating the bystander's Eighth Amendment rights. *Id.* at 691. Nonetheless, the court granted the officer qualified immunity because a reasonable

officer could have perceived that the plaintiff was threatening another inmate with serious injury or death, so shooting him was a good-faith effort to restore order. *Id.* at 693.

Raborn's selection of the 40mm launcher as the most appropriate use-of-force option to end the disturbance was reasonable, given his limited choices and his position in the second-floor control booth. (SUF ¶¶ 14, 38.) The fact that the foam round inadvertently struck Carbajal in the face instead of in his green zone does not disqualify Raborn from immunity.[2] *Saucier*, 533 U.S. at 205.

And though Raborn's second shot hit Carbajal below the eye, causing serious injury, Carbajal sets forth no facts showing that Raborn's shot was anything but a mistake. Instead, Carjabal relies on hindsight and questions Carbajal's judgment.[3] He argues that (1) Officers Rodriguez and Stewart—whom Raborn could not see from the booth—were better equipped to handle the situation because they were closer and armed with batons and pepper spray (Mot. 13); (2) Raborn neglected to give them an opportunity to intervene because he did not verbally communicate with them before firing either shot (Mot. 13–14); (3) Raborn should have chosen a less-lethal weapon than the 40mm launcher (Mot. 11–13); and (4) the fight already stopped (Mot. 11).

But given the rapidity of events (the entire incident lasted only about forty-five seconds) and the discretion due to prison officials, the Court cannot fault Raborn for not making a decision that; at best; was clarified only in hindsight. *Saucier*, 533 U.S. at 205.

/ / /

/ / /

---

[2] The Court notes that a shot from a second-floor control tower to the first-floor dayroom will necessarily travel from a higher elevation to a lower elevation, thereby increasing the chances an errant shot will strike someone in the head. This geometry is different than shooting someone at the same elevation.

[3] Carbajal does not address the issue of qualified immunity in any detail. Giving Carbajal the benefit of the doubt, the Court construes Carbajal's Eighth Amendment arguments pointing to the unreasonableness of Raborn's actions as Carbajal's arguments supporting a finding of no qualified immunity.

## IV. CONCLUSION

The doctrine of qualified immunity does not allow the benefit of hindsight. Raborn's actions must be measured at the time and under the circumstances of the incident. The Court concludes that it would have been clear to a reasonable prison officer that it was lawful to shoot Carbajal with a foam round from a 40mm launcher to end the fight. There is no evidence suggesting that Raborn's actions were anything but a good-faith effort to restore order. And so, Raborn's shooting of Carbajal is not a violation of a clearly-established right. Accordingly, Raborn is entitled to qualified immunity.

**IT IS SO ORDERED.**

July 17, 2013

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**